**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Apogee Medical Management Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>St. Francis Hospital Incorporated,<br><br>Defendant. | No. CV-18-00863-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant St. Francis Hospital Incorporated's ("St. Francis") motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue. (Doc. 11.) The motion is fully briefed, and the Court heard oral argument on October 16, 2018. (Docs. 17-18.) For the following reasons, St. Francis' motion is denied.

**I. Background**

Plaintiff Apogee Medical Management Incorporated ("Apogee") is an inpatient physician ("Hospitalist") provider with its principal place of business in Arizona. (Doc. 1 ¶¶ 1, 6.) Apogee contracts with hospitals around the country to arrange and manage Hospitalist care. (¶ 5.) In South Carolina, Apogee's Hospitalists provide medical services through Apogee's affiliated physician group. (¶ 7.) In 2014, Apogee began discussions with St. Francis about managing the Hospitalist program at St. Francis' facilities in South Carolina. (Doc. 17-3 ¶¶ 5-10.) Apogee and St. Francis formally entered into a Hospitalist Services Agreement ("HSA") in July 2015. (Doc. 1 ¶ 17.)

In early 2017, Apogee became concerned about high patient volumes at St. Francis' facilities. (¶ 21.) Apogee and St. Francis agreed to add permanent staffing and to the use of Locum Tenens physicians ("Locums") for interim coverage. (¶¶ 12, 22.) With St. Francis' approval, Apogee submitted monthly invoices for reimbursement of the Locums' cost, which St. Francis paid. (¶¶ 26, 28.)

At some point thereafter, St. Francis requested additional Hospitalists. (¶ 29.) On April 19, 2017, Apogee and St. Francis met to discuss increasing the number of Hospitalists. (¶ 30.) Apogee and St. Francis agreed upstaffing required continued use of Locums. (¶ 31.) Following the meeting, Apogee and St. Francis exchanged emails to memorialize their discussion, thereby amending the HSA ("April 2017 Amendment"). (¶¶ 33-35.)

Following the April 2017 Amendment, St. Francis continued to pay Apogee's monthly invoices for the Locums. (¶ 46.) In December 2017, however, St. Francis refused to pay the outstanding balance of Locums invoices and asked Apogee to refund all amounts invoiced and paid by St. Francis in 2017, and for certain amounts invoiced and paid in 2016. (¶¶ 48-49.) When St. Francis refused to pay the agreed-upon amounts, Apogee filed this lawsuit. (¶ 50.)

As relevant here, Apogee alleges St. Francis breached the HSA and its implied covenant of good faith and fair dealing when St. Francis refused to pay for the Locums services. (¶¶ 52-55, 57-60.) Alternatively, Apogee argues St. Francis' refusal to pay for the Locums services constitutes unjust enrichment, Apogee is entitled to recover the reasonable value of its services provided under the HSA, and that Apogee detrimentally relied on St. Francis' promises to pay for the Locums services. (¶¶ 62-69, 73-74, 76-79.) St. Francis has moved to dismiss the claims against it for lack of personal jurisdiction or, alternatively, to transfer the case to the District of South Carolina. (Doc. 11.)

**II. Motion to Dismiss for Lack of Personal Jurisdiction**

    **A. Legal Standard**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Moreover, "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation and citation omitted). The court, however, "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

**B. Analysis**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Arizona authorizes courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a). Thus, courts in this District may exercise personal jurisdiction over a defendant who is not physically present in Arizona if the defendant has sufficient minimum contacts with the state, such that the suit can be maintained without offending traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be general or specific. General personal jurisdiction over a nonresident defendant requires "continuous corporate operations within a state so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318. Specific personal jurisdiction exists when a lawsuit arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colo., S.A. v. Hall*, 466 U.S. 408, 414 n.8

(1984). Here, Apogee contends only that St. Francis is subject to specific jurisdiction. (Doc. 17 at 6-12.)

In determining whether specific jurisdiction over an out-of-state defendant exists, the Court applies a three-prong test:

> (1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal quotation and citation omitted). Apogee bears the burden of satisfying the first two prongs. *Id.* at 802. If Apogee succeeds, the burden shifts to St. Francis to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### 1. Purposeful Availment

Apogee has made a prima facie showing that St. Francis purposefully availed itself of this forum. The purposeful availment prong requires St. Francis to "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). St. Francis purposefully availed itself of the forum because the HSA created a substantial connection—in the form of "continuing obligations between [itself] and residents of the forum"—between St. Francis and Apogee in Arizona. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation and citation omitted).

In determining whether a contract creates continuing obligations with a forum, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation and citation omitted). Here, Apogee and

St. Francis took part in substantial communications before entering into the HSA, including an in-person meeting, a proposal submission, and contract negotiations by email and telephone. (Doc. 17-3 at ¶¶ 5-6, 10-14.) The HSA's terms note that Apogee is an Arizona corporation and envision a substantial relationship between the two parties by designating Apogee as the "exclusive provider" of Hospitalist services at St. Francis. (Docs. 16-1, 16-3.) Finally, the parties' course of dealing established an ongoing relationship with the forum. Throughout the parties' relationship, St. Francis and Apogee's Arizona employees maintained a continuous course of mail and email communications, and St. Francis regularly sent payments to Apogee's headquarters in Arizona. (Doc. 1 ¶¶ 26-40.) The parties also negotiated several changes to the HSA, including the April 2017 Amendment, in person and over email. (¶¶ 22-35.) Although the HSA includes a South Carolina choice of law provision (Doc. 16-3 at 2), a choice of law provision is not dispositive of the jurisdiction question. *See Burger King*, 471 U.S. at 482.

Relying on *Picot*, St. Francis argues that the fact the HSA envisioned Apogee discharging its obligations in the forum does not justify the exercise of jurisdiction over St. Francis. (Doc. 11 at 5-6.) St. Francis, however, overlooks that the contract in *Picot* did not envision a substantial connection with the forum. *Picot*, 780 F.3d at 1209-10.

St. Francis also argues that its communications and negotiations with Apogee do not constitute purposeful availment because Apogee solicited the relationship.[1] (Doc. 18 at 2.) Although Apogee's initiation might weigh slightly against a finding of purposeful availment, Apogee's initiation does not negate that St. Francis voluntarily entered into an exclusive relationship with Apogee. The Court also disagrees with St. Francis' argument that the electronic communications and wire transfers are constitutionally insignificant. (Doc. 11 at 6; Doc. 18 at 3-4.) St. Francis overlooks the significance of these contacts in

---

[1] St. Francis' former CEO, Mark Nantz, states in his affidavit that Apogee initiated contact with St. Francis. (Doc. 18-1 ¶¶ 4-5.) Although Apogee argues that St. Francis initiated contact (Doc. 17 at 10, 14), Apogee's allegation is not supported by affidavit. The Court therefore cannot assume the truth of Apogee's allegation.

determining whether a contract involves continuing obligations with the forum. *See Burger King*, 471 U.S. at 480-81 (noting that electronic communications and payment transfers are important considerations for determining parties' actual course of dealing).[2]

Finally, St. Francis argues that its former Chief Medical Officer's attendance at a two-day Apogee seminar in Arizona is not a constitutionally significant contact with the forum. (Doc. 18 at 3.) But Apogee does not rely exclusively on this visit to Arizona to establish personal jurisdiction. The significance (or lack thereof) of this contact therefore does not alter the Court's conclusion. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (noting that physical presence in the forum is not required). The Court finds that St. Francis engaged in sufficient affirmative conduct purposefully availing itself of this forum.

### 2. Basis for Claims

Apogee also has shown that its claims arise out of St. Francis' contacts with the forum. A claim arises out of a defendant's contacts with the forum when the claim would not have arisen "but for" the defendant's actions in the forum. *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Here, Apogee's claims involve the unpaid Locums invoices. St. Francis argues that the dispute arises out of the April 2017 Amendment, and that the April 2017 Amendment is not a constitutionally significant contact with the forum because it arose out of a meeting in South Carolina, came at the insistence of Apogee, and focused solely on needs existing in South Carolina. (Doc. 11 at 7-8.) But the result is the same regardless of whether Apogee's claims arise out of the April 2017 Amendment specifically, or the HSA more generally.

Like the HSA, the April 2017 Amendment created continuing obligations with the forum. Prior to creating the amendment, Apogee and St. Francis engaged in several

---

[2] At oral argument, St. Francis argued that the electronic communications are not constitutionally significant because the emails were only about payment and the parties did not exchange enough of them for there to be constant interaction. Apogee's exhibits show, however, that the parties exchanged many emails over several years. (Doc. 17-2.) Further, the content of the emails is significant because this suit involves unpaid invoices. Thus, the emails are a significant part of the overall determination of whether St. Francis had continuing obligations with the forum.

contractual negotiations. (Doc. 17-3 ¶¶ 5-13; Doc. 1 ¶¶ 21-22, 29-35.) The amendment also furthered the parties' already exclusive relationship by increasing the number of Hospitalists Apogee was to provide under the HSA. (Doc. 1 ¶ 31.) Further, as a result of the amendment, St. Francis and Apogee's Arizona employees met in person, exchanged emails, and St. Francis sent payments to Apogee's headquarters in Arizona. (¶¶ 30-46.) But for Apogee and St. Francis entering into the HSA or, alternatively, amending the HSA, Apogee neither would have paid for the Locums services nor suffered the harm alleged. Accordingly, the Court finds that Apogee's claims arise out of St. Francis' forum-related contacts.

### 3. Reasonableness

Because Apogee has shown that St. Francis purposefully availed itself of this forum and that its claims arise out of those forum-related contacts, the Court may exercise specific personal jurisdiction unless St. Francis otherwise demonstrates that it would be unreasonable to do so. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (noting that defendant "must come forward with a compelling case that the exercise of jurisdiction would not be reasonable"). In assessing the reasonableness of jurisdiction, the Court balances seven factors:

> (1) The extent of the defendant's purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (internal quotation, citation, and alterations omitted).

St. Francis presents no arguments regarding the reasonableness of jurisdiction. Instead, St. Francis argues only that it is not subject to personal jurisdiction in the forum because the HSA does not require it to discharge any of its obligations in Arizona. (Doc. 11 at 5-8; Doc. 18 at 2-4.) For the reasons articulated above, however, the Court may exercise specific personal jurisdiction over St. Francis because the HSA and the April 2017 Amendment created a continuing and ongoing relationship with the forum. Because St. Francis has not offered a compelling case that exercising jurisdiction would be unreasonable, the Court denies its motion to dismiss for lack of personal jurisdiction.

### III. Motion to Transfer Venue

#### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When determining whether the convenience of the parties and witnesses favor a transfer, a court weighs multiple factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The movant bears the burden of showing that a transfer is warranted. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

#### B. Analysis

St. Francis argues that this case should be transferred to the District of South Carolina. Pursuant to 28 U.S.C. § 1391(b):

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is

- 8 -

located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For venue purposes, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). This case therefore could have been brought in the District of South Carolina because St. Francis admittedly is subject to personal jurisdiction there. (Doc. 11 at 9.) Nonetheless, the convenience factors, on balance, do not favor a transfer of venue.

The first factor weighs minimally in favor of transfer. Apart from negotiations that took place over email and by phone in both South Carolina and Arizona, Apogee employees traveled to South Carolina on several occasions, including to negotiate the April 2017 Amendment. (Doc. 11-1 ¶ 17.) Although this factor favors St. Francis, the Court finds that this factor is less important. Indeed, though the location where the contract was negotiated and executed might inform the analysis of other factors—for example, the state most familiar with the governing law, the parties' contacts with the forum, and the ease of access to proof—it is not clear what independent significance this factor has that would make South Carolina a more convenient forum.

The second factor also weighs minimally in favor of transfer. The HSA contains a South Carolina choice of law provision. Although Apogee raises a reasonable argument that the HSA's choice of law provision might not apply to its quasi-contractual and equitable claims, the Court need not resolve this dispute at this time because, even if South Carolina law applied to all of Apogee's claims, federal courts routinely are tasked with applying the laws of other states. Thus, this factor does not weigh heavily in favor of a transfer.

The third factor weighs against a transfer of venue. Apogee chose to litigate in Arizona and "[c]ourts do not lightly disturb a plaintiff's choice of forum." *Sidi Spaces LLC v. CGS Premier Inc.*, No. CV16-01670-PHX-DGC, 2016 WL 3654306, at *2 (D. Ariz. July 6, 2016).

The fourth and fifth factors—which pertain to the parties' contacts with the forum, generally and in connection with the specific cause of action—are neutral. Both parties have significant contacts with the forum—Apogee is headquartered here and St. Francis entered into an exclusive contract with an Arizona business. St. Francis' former Chief Medical Officer also traveled to Arizona to take part in Apogee's training seminar. St. Francis argues, however, that the parties' contacts with South Carolina are far more significant because St. Francis operates entirely within South Carolina, Apogee's South Carolina affiliate provided the Hospitalists under the HSA, and Apogee's employees regularly traveled to South Carolina in connection with the HSA. (Doc. 11 at 10.) Although the parties had substantial contact with South Carolina, their contacts with Arizona, both general and specific, also are significant. Thus, the fourth and fifth factors do not weigh heavily for or against a transfer.

Finally, the sixth through eighth factors are neutral. Both St. Francis and Apogee agree that the cost of litigation in the two forums is unappreciable. (Doc. 17 at 15; Doc. 11 at 10.) As for availability of compulsory process, St. Francis contends that this factor weighs in favor of transfer because St. Francis' former Chief Medical Officer, Dr. Saccocio, no longer works for St. Francis and lives in South Carolina. (Doc. 11 at 11.) In his affidavit, St. Francis' CEO, Craig McCoy, explains that Dr. Saccocio was with St. Francis when Apogee first negotiated the HSA, oversaw the Hospitalist program, and communicated with Apogee employees about contract performance. (Doc. 11-1 ¶ 23.) Dr. Saccocio left before the April 2017 Amendment, however, and, as Apogee points out in its response, St. Francis does not clearly indicate whether Dr. Saccocio is personally familiar with the conflict at issue. (Doc. 11-1 ¶ 23; Doc. 17 at 16.) Apart from Dr. Saccocio, St. Francis concedes that the key witnesses in this case are employees of St.

Francis and Apogee. (Doc. 11 at 10.)

On balance, the Court finds the convenience factors do not weigh so heavily in favor of South Carolina to disrupt Apogee's otherwise permissible choice of forum. Accordingly, St. Francis' alternative request to transfer venue is denied.

**IV. Conclusion**

For the foregoing reasons, the Court finds that it has specific personal jurisdiction over St. Francis, and that the convenience factors do not weigh in favor of transferring this case to the District of South Carolina. Accordingly,

**IT IS ORDERED** that St. Francis' motion to dismiss or, alternatively, to transfer venue (Doc. 11) is **DENIED**.

Dated this 23rd day of October, 2018.

_____
Douglas L. Rayes
United States District Judge